UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
:
KARAL SIEWMUNGAL, on behalf of himself : **MEMORANDUM**
And all other persons similarly situated, : **DECISION AND ORDER**
:
                       Plaintiff, : 11 cv 5018 (BMC)
:
                  - v. - :
:
NELSON MANAGEMENT GROUP LTD., :
HAZEL TOWERS COMPANY, ROBERT :
NELSON, ADAM NADEL, and JOHN :
DOES # 1 - 10 :
:
                      Defendants.
------------------------------------------------------------ X

**COGAN**, District Judge.

      Plaintiff Kawal Siewmungal commenced this action under the Fair Labor Standards Act ("FLSA"), on behalf of himself and others similarly situated, seeking unpaid overtime compensation from defendants Nelson Management Group, Ltd. ("Nelson"), Hazel Towers Company, L.P. ("Hazel Towers"), Robert Nelson, Adam Nadel, and John Does #1-10. Plaintiff seeks conditional certification as a collective action under Section 216(b) of the FLSA, as well as permission to send court-authorized notice to all similarly situated current and former security guards employed by the defendants. In order to facilitate such notice, plaintiff also moves for an Order to direct defendants to disclose the names and last known addresses of current and former employees who are potential collective action members.

      For the reasons stated below, plaintiff's motion for conditional certification, court authorized notice, and disclosure of contact information is granted. Plaintiff's proposed form of notice shall be revised and agreed to by the parties as described below.

## BACKGROUND

Nelson is a real estate property management group, which manages and/or owns numerous residential buildings throughout New York City. Hazel Towers, a single residential apartment building located at 1730-1740 Mulford Avenue, Bronx, New York, is one of the buildings managed by Nelson. Nelson and the Hazel Towers Company possess common ownership and management, with Robert Nelson and Adam Nadel respectively serving as principal and officer for both entities.

One of the services that Nelson provides in buildings that it manages is to furnish security guards. In June 2002, Nelson hired plaintiff as a security guard and assigned him to the Hazel Towers building. Plaintiff worked exclusively at the Hazel Towers Building and was never transferred to any other property. Originally, plaintiff's pay stubs listed Nelson Management as his employer. At some point, that changed, and Hazel Towers became listed as his employer.

Plaintiff avers that defendant Adam Nadel worked out of Nelson's office in Queens, and only visited the Hazel Towers building about once a week. Thus, when plaintiff needed to speak to Nadel, he would call him at Nelson's offices, not at Hazel Towers. Plaintiff recalls Nadel discussing other buildings that he was responsible for managing. Plaintiff also avers that when his supervisor at Hazel Towers was fired, the supervisor was summoned to Nelson's office for that purpose, and that the security cameras at Hazel Towers are monitored by Nelson employees out of Nelson's offices, not at Hazel Towers. Plaintiff also alleges that when a porter at Hazel Towers was promoted to superintendent, that employee was reassigned to another building managed by Nelson.

Nadel, in turn, alleges that all security guards who are "employed by Hazel Towers" work "exclusively at Hazel Towers."

Beginning around 2007, plaintiff claims that his regular work schedule was forty-eight hours a week, which included four standard eight hour shifts, plus one "double shift" of sixteen hours. Plaintiff was paid by the defendants at an hourly rate, but alleges that he was not paid the "time-and-a-half" overtime premium required under the FLSA for hours worked in excess of forty hours a week. Due to his communications with other security guards employed at the Hazel Towers Building, plaintiff allegedly has learned that these other guards have similarly been denied the mandatory overtime premiums due to them for working over forty hours per week. Plaintiff concedes that he does not have first-hand knowledge of the compensation practices or any specific instances of withholding of overtime premiums at any other property managed by Nelson Management.

## DISCUSSION

I. Scope of the Collective Action

Section 216(b) of the FLSA provides an employee with a private cause of action against an employer for unpaid overtime compensation and/or minimum wages. Bifulco v. Mortg. Zone, Inc., 262 F.R.D. 209, 212 (E.D.N.Y. 2009) (citing 29 U.S.C. § 216(b)). Under the FLSA, an employee may bring a collective action on behalf of himself, as well as others "similarly situated," so long as any employee wishing to join the action gives his consent in writing to the court in which the action is brought. Sobczak v. AWL Indus., Inc., 540 F. Supp. 2d 354, 362 (E.D.N.Y. 2007) (quoting 29 U.S.C. § 216(b)). The Second Circuit has recognized that district courts have the discretion to authorize the distribution of notice to any potential plaintiffs in order to inform them of their ability to opt-in to the collective action. See Myers v. Hertz Corp.,

624 F.3d 537, 554 (2d Cir. 2010); Searson v.Concord Mortg. Corp., No. 07 Civ. 3909, 2009 WL 3063316, *7 (E.D.N.Y. Sept. 24, 2009); Bifulco, 262 F.R.D. at 216; Sobczak, 540 F. Supp. 2d at 362.

A district court may authorize an opt-in notice for a collective action if the plaintiff employee has demonstrated that the potential action members are "similarly situated" with respect to a FLSA violation. Myers, 624 F.3d at 555; Cohen v. Gerson Lehrman Group, Inc., 686 F. Supp. 2d 317, 326 (S.D.N.Y. 2010); Cruz v. Lyn-Rog Inc., 754 F. Supp. 2d 521, 524 (E.D.N.Y. 2010); Bifulco, 262 F.R.D. at 213; Sobczak, 540 F. Supp. 2d at 362. Although the FLSA has not explicitly defined the phrase "similarly situated," courts have found that a plaintiff could meet this burden by making "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Moore v. Eagle Sanitation, Inc., 276 F.R.D. 54, 58 (E.D.N.Y. 2011) (quoting Hoffman v. Sbarro, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). Numerous courts in the Second Circuit have acknowledged that the plaintiff's burden at this initial stage is lenient. See Moore, 276 F.R.D. at 58 (citing Rubery v. Buth Na Bodhaige, Inc., 569 F. Supp. 334, 336 (W.D.N.Y. 2008)); Cruz, 754 F. Supp. 2d at 524 ("[C]onsiderably less stringent" than class certification under Rule 23); Sobczak, 540 F. Supp. 2d at 362 ("Burden at this initial stage is minimal"); Wraga v. Marble Lite, Inc., No. 05 Civ. 5038, 2006 WL 2443554, *1 (E.D.N.Y. Aug. 22, 2006).

In making this minimal showing, courts generally require "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." Cruz, 754 F. Supp. 2d at 524 (quoting Sexton v. Franklin First Fin., Ltd., No. 08 CV 4950, 2009 WL 1706535, at *3 (E.D.N.Y. June 16, 2009). Courts do not require proof of an actual FLSA violation by the employer, "but rather that a 'factual nexus' exists between the

plaintiff's situation and the situation of other potential plaintiffs." Moore, 276 F.R.D. at 58 (quoting Sobczak, 540 F. Supp. 2d at 362). This preliminary determination is "typically based on the pleadings, affidavits, and declarations" submitted by the party seeking conditional certification. Id. (quoting Sexton, 2009 WL 1706535, at *3). see also Hallisey v. Am. Online, Inc., No. 99 Civ. 3785, 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008) ("Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, declarations…."). However, "the modest factual showing [conditional certification] cannot be satisfied simply by unsupported assertions." Rosario v. Valentine Ave. Disc. Store, Co., No. 10 Civ. 5255, 2011 WL 5244965, *4 (E.D.N.Y. Nov. 2, 2011) (quoting Myers, 624 F.3d at 555). Therefore, a court will deny a motion for court-authorized notice where there is a "total dearth of factual support for the plaintiffs' allegations of widespread wrongdoing." Hoffman v. Sbarro, 982 F. Supp. 249, 262 (S.D.N.Y. 1997) (citing Severtson v. Phillips Beverage Co., 137 F.R.D. 264, 266 (D. Minn. 1991)).

Defendants concede that a preliminary authorization of a collective action is appropriate as between the plaintiff and all current and former security guards employed at Hazel Towers. Given plaintiff's communications with other security guards at Hazel Towers concerning their non-receipt of overtime premiums, as evidenced in his declaration, plaintiff meets the lenient "similarly situated" standard. Such communications would constitute a "modest factual showing" that plaintiff and the other security guards at Hazel Towers were "victims of a common policy" by defendants to withhold overtime premiums in violation of the FLSA.

Defendants contend, however, that plaintiff has no knowledge of practices at other Nelson-managed buildings and thus, there is no basis in the record to conclude that other security guards at those other Nelson-managed buildings are similarly situated to plaintiff. I disagree.

Granting plaintiff's motion requires the drawing of an inference that Nelson pays or arranges for payment of security guards at its other managed buildings the same way it arranges for payment of security guards at Hazel Towers, but this is a very viable inference given the evidence of centralization that plaintiff has submitted. The evidence shows that: (1) for some time after 2002, security guards at Hazel Towers were employed directly by Nelson, and only later were shifted to the payroll of the particular building to which they were assigned; (2) Nelson has the ability to transfer employees, albeit other than security guards, from one of its managed buildings to another; (3) supervisors are fired from Nelson's central office; (4) security monitoring for Hazel Towers is not performed at Hazel Towers, but at Nelson's headquarters.

These facts compel a preliminary conclusion that security guards at Hazel Towers and Nelson's other buildings are employed in the same manner. In drawing this inference, I cannot overlook the fact that Nelson is, after all, a real estate management company. It has offered no reason why it would treat security guards at one of its buildings differently than at others, and I cannot think of any. The inference is clear, and Nelson does not offer any contrary evidence, that when one of its managed buildings needs security guards, Nelson hires them and either puts them on its own payroll or arranges for them to be on the payroll of the building to which they are assigned on terms that Nelson determines. For his part, Nadel manages buildings other than Hazel Towers, and although he has submitted an affidavit, he does not claim that the decision as to the terms of employment of security guards, insofar as they pertain to overtime, vary from building to building. I also cannot see any reason why Nelson would monitor Hazel Towers from its central office but monitor other buildings from within those buildings, nor why the position of security guard, which is a rather commoditized employment position in New York City, would be different from one commonly-managed building to the next.

Given the lenient standard of proof required for this action to proceed collectively, the viable inferences to be drawn from plaintiff's evidence are sufficient at this stage to support the conclusion that security guards at other Nelson-managed buildings are similarly situated to plaintiff.

II. Collective Action Notice Requirements

The form and provisions of a court-authorized collective action notice "are left to the broad discretion of the trial court." Sobczak, 540 F. Supp. 2d at 364 (citing Hoffman-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989)).  Plaintiff requests that the Court authorize the distribution of notice by first class mail to potential Collective Action Members.  Defendants claim the proposed notice is improper because it "contemplates being sent to non-Hazel Tower security guards" and contains certain language that does not truly notify the plaintiffs of their rights.

Defendants' argument as to the overbreadth of the notice (by covering buildings other than Hazel Towers) is moot in light of the ruling set forth above.

Defendants next request that the notice set forth in a separate heading that the opt-in plaintiffs may be required to appear for depositions, respond to written discovery, appear at trial, and potentially pay the defendants' cost if they do not prevail.  Defendants also request that the potential plaintiffs' right to retain other counsel be placed in a separate heading, with consent forms addressed to Clerk of the Court, rather than plaintiff's counsel.  Finally, defendants move to include a clear statement that receipt of the notice does not indicate an entitlement to recovery.

As to the claim that the proposed language insufficiently describes the burden on opt-in plaintiffs, I recognize the reality that plaintiffs' attorneys generally propose notices that minimize the potential burden on participants in order to increase participation, while defendants' attorneys like to include every potential burden a participant might undertake in order to deter participation. I think the proper balance with regard to plaintiff's proposed notice here is to insert language into the notice stating that opt-in plaintiffs may be called upon to testify at trial, appear for depositions, and respond to discovery requests because there is a reasonable likelihood that those eventualities will occur. See Sexton, 2009 WL 1706535, at *12 (citing Hallissey v. America Online, Inc., No. 99 Civ. 3785, 2008 WL 465112, *3 (S.D.N.Y. Feb. 19, 2008)). However, defendants' request for language stating that potential plaintiffs might be liable to pay defendants' costs if they do not prevail is "unnecessary and potentially confusing", id., and may have too great an *in terrorem* effect on potential plaintiffs in relation to the actual potential for that consequence. See Guzman v. VLM, Inc., No. 07 Civ. 1126, 2007 WL 2994278, *8 (E.D.N.Y. Oct. 11, 2007).

Defendants also request that potential plaintiffs' right to retain other counsel be placed in a separate heading, with consent forms addressed to Clerk of the Court. Language stating that opt-in plaintiffs have the freedom to choose their own counsel is an appropriate provision of any proposed notice. See Sexton, 2009 WL 1706535, at *12 (citing Rubery, 569 F. Supp. 2d at 338). Similarly, a proposed notice may require potential plaintiffs to join the suit by returning their consent forms to the Clerk of the Court. See Searson, 2009 WL 3063316, at *7 ("The language of the notice must also state that potential plaintiffs can join the suit by filing their opt-in consent form directly with the Clerk of the Court.").

However, plaintiff's proposed notice already satisfies both of the defendant's requests. A separate heading is unnecessary to convey to potential plaintiffs their freedom in choosing counsel. Plaintiff's proposed notice, which outlines potential opt-ins' possible representation routes as (1) and (2), under "How Do I Join," is sufficient and does not "presuppose a choice of counsel." Rather, it clearly states that the recipient may "join the lawsuit by retaining another lawyer of [his/her] own choosing." In addition, the proposed notice mandates return of the consent form to the Clerk of the Court if the opt-in plaintiff chooses to retain another lawyer. Therefore, no modification is required as to the choice of counsel.

Finally, plaintiff's proposed notice should be modified to include a clear statement that receipt of the notice does not indicate an entitlement to recovery. In order for the notice to be truly "informative," Hoffman,-La Roche, 493 U.S. at 172, unsophisticated potential plaintiffs should be aware that at this stage, they are not entitled to any monetary recovery.

The parties shall confer and agree upon the revisions to the notice in accordance with the above within 10 days.


III. Disclosure of the Names and Addresses of Potential Plaintiffs

Plaintiff also seeks disclosure by Nelson of the names and addresses of potential plaintiffs to the collective action in order to send them the proposed notice and consent forms. Numerous courts have found that discovery of such information is appropriate in FLSA collective actions. See Hoffman, 493 U.S. at 170; Moore, 276 F.R.D. at 59-60; Cruz, 754 F. Supp. 2d at 526-27; Bifulco, 262 F.R.D. at 217; Searson, 2009 WL 3063316, at *8; Sexton, 2009 WL 1706535, at *13; Sobczak, 540 F. Supp. 2d at 364. Therefore, the names and addresses of

potential plaintiffs shall be disclosed to plaintiff's attorney within fifteen (15) days from the date this Order is entered.

## CONCLUSION

For the reasons set forth above, plaintiff's motion for conditional certification as a FLSA collective action, pursuant to Section 216(b) of the FLSA, court authorized notice (as amended), and production by the defendants of potential plaintiffs' contact information is granted.

**SO ORDERED.**

Dated: Brooklyn, New York
       March 3, 2012

                                  Signed electronically/Brian M. Cogan
                                  _____
                                            U.S.D.J.